**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

| | |
|---|---|
| **BROADVOX-CLEC, LLC,** | * |
| Plaintiff/Counter-Defendant, | * |
| v. | *   Case No.: PWG-13-1130 |
| **AT&T CORPORATION,** | * |
| Defendant/Counter-Plaintiff. | * |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**MEMORANDUM OPINION**

Plaintiff/Counter-Defendant Broadvox-CLEC, LLC ("Broadvox") and Defendant/Counter-Plaintiff AT&T Corporation ("AT&T") have filed claims against each other, centered around the services that Broadvox provided to AT&T and whether those services entitle Broadbox to payment as a "domestic access" provider for purposes of the Communications Act, 47 U.S.C. §§ 201, 203. Some or all of the parties' claims may present issues that fall within the purview of the Federal Communications Commission ("FCC"). Broadvox's pending Motion to Dismiss challenges whether AT&T has stated counterclaims for Communications Act violations, fraud, and a declaratory judgment.[1] Because AT&T has alleged damages properly, the motion will be denied as to the Communications Act and declaratory judgment counts. However, as AT&T has failed to allege reliance, the fraud count will be dismissed without prejudice. Moreover, before this case proceeds to summary judgment practice, the parties will brief the issue of primary jurisdiction raised in their previous filings.

---

[1] I have reviewed carefully Broadvox's Motion to Dismiss AT&T's Counterclaims, ECF No. 24; along with the supporting memorandum, ECF No. 24-1; AT&T's Opposition, ECF No. 25; and Broadvox's Reply, ECF No. 31. A hearing is unnecessary because the issues are presented adequately in the filings. *See* Loc. R. 105.6. For the reasons stated herein, AT&T's Motion will be granted in part and denied in part.

I.  **BACKGROUND**

In resolving Broadvox's Motion, "this Court accepts as true the facts alleged in [Defendant's] Counterclaim." *ATS Int'l Servs. v. Kousa Int'l, LLC*, No. RDB-12-2525, 2014 WL 1407290, at *1 (D. Md. Apr. 10, 2014) (citing *Aziz v. Alcolac, Inc.*, 658 F.3d 388, 390 (4th Cir. 2011)). Although the factual and regulatory background of this case is complex, only a brief understanding is necessary for resolution of this Motion to Dismiss. In its Amended Complaint, Broadvox claims that it provided AT&T with "switched access" services, and that AT&T failed to pay its bills for these services, in violation of the Communications Act, 47 U.S.C. § 201. Am. Compl. ¶¶ 1, 43–52, ECF No. 3. In addition, Broadvox alleges another Communications Act violation in AT&T's allegedly discriminatory payment practices, *id.* ¶¶ 53–58; violations of its Federal and State Tariffs, *id.* ¶¶ 37–41, 59–64; and quantum merit, *id.* ¶¶ 65–69.

AT&T moved to dismiss the Amended Complaint on June 6, 2013, ECF No. 5. In the Letter Order denying that motion, I outlined the complex regulatory questions presented in this case and denied AT&T's motion without prejudice, allowing AT&T to raise the issues again after discovery. Ltr. Order, ECF No. 16. Further, I noted that the primary jurisdiction issue that AT&T alluded to in a footnote to its reply, *see* Def.'s Reply 11 n.14, ECF No. 10, would be addressed most effectively at a later junction. Ltr. Order 3.

AT&T filed its Answer two weeks later, raising, *inter alia*, the primary jurisdiction doctrine again, this time as a question of ripeness. Answer 9, ECF No. 20. Additionally, AT&T explained that it disputed the amounts due to Broadvox and paid only what it estimated was billed correctly. Countercl. ¶ 10, ECF No. 20. With its Answer, AT&T filed four counterclaims to recover any potential overpayment. The first two allege violations of the Communications Act based on the fact that, in AT&T's view, Broadview neither qualifies as a "domestic access" provider, Countercl. ¶ 61, nor operates an "'end office' switch," *id.* ¶ 74. The third counterclaim

alleges fraudulent and negligent misrepresentation stemming from Broadvox's bills to AT&T. *Id.* ¶¶ 84–91. The last seeks a declaratory judgment confirming AT&T's view of Broadvox's status under the Communications Act. *Id.* ¶¶ 92–95. Broadvox moves for dismissal of all of these claims or, alternatively, for a more definite statement. Pl.'s Mot. 1.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) provides for "the dismissal of a complaint if it fails to state a claim upon which relief can be granted." *Velencia v. Drezhlo*, No. RDB-12-237, 2012 WL 6562764, at *4 (D. Md. Dec. 13, 2012). A counterclaim is "governed by the same principle, with respect to its sufficiency, as a complaint." *Kennedy Lumber Co. v. Rickborn*, 40 F.2d 228, 231 (4th Cir. 1930) (citing *Davis v. Bessemer City Cotton Mills*, 178 F. 784, 790 (4th Cir. 1910)). This Rule's purpose "'is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" *Id.* (quoting *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006)). To that end, the Court bears in mind the requirements of Rule 8, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), when considering a motion to dismiss pursuant to Rule 12(b)(6). Specifically, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and must state "a plausible claim for relief," as "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Iqbal*, 556 U.S. at 678–79; *see Velencia*, 2012 WL 6562764, at *4 (discussing standard from *Iqbal* and *Twombly*). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663. When ruling on such a motion, the court must "accept the well-pled allegations of the

complaint as true," and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997).

That said, "'factual allegations must be enough to raise a right to relief above a speculative level.'" *Proctor v. Metro. Money Store Corp.*, 645 F. Supp. 2d 464, 472–73 (D. Md. 2009) (quoting *Twombly*, 550 U.S. at 545). Particularly, the Court is not required to accept as true "a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or "allegations that are merely conclusory, unwarranted deductions of fact or unreasonable inferences," *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002) (citation omitted).

Where the allegations in a complaint sound in fraud, the plaintiff also must satisfy the heightened pleading requirements of Fed. R. Civ. P. 9(b) by "stat[ing] with particularity the circumstances constituting fraud." "The purposes of Rule 9(b) are to provide the defendant with sufficient notice of the basis for the plaintiff's claim; to protect the defendant against frivolous suits; to eliminate fraud actions where all of the facts are learned only after discovery; and to safeguard the defendant's reputation." *Piotrowski v. Wells Fargo Bank, N.A.*, No. DKC-11-3758, 2013 WL 247549, at *5 (D. Md. Jan. 22, 2013) (citations omitted); *see Spaulding v. Wells Fargo Bank, N.A.*, 714 F.3d 769, 780 (4th Cir. 2013). Rule 9(b) requires Plaintiff to allege "the time, place and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999) (citing 5A *Charles Alan Wright, et al., Fed. Prac. & Proc. Civ.* § 1297, at 590 (2d ed. 1990)); *see also Biktasheva v. Red Square Sports*, 366 F. Supp. 2d 289, 295 (D. Md. 2005) (citing cases). However, Rule 9(b) permits "intent, knowledge, and other conditions of a person's mind [to] be alleged generally." Fed. R. Civ. P. 9(b).

III.     DISCUSSION

       **A.  Failure to Allege Damages (All Counts)**

With respect to all four counterclaims, Broadvox argues that AT&T has failed to allege damages, which Broadvox believes is an essential element of each claim.  Pl.'s Mem. 7–10. According to Broadvox, "AT&T openly admits that it did not pay Broadvox any disputed amount."  *Id.* at 8 (citing Countercl. ¶ 10).  It is true that AT&T asserts that "[f]or the services that were improperly billed, AT&T disputed the bills and withheld payment."  Countercl. ¶ 10. Yet, AT&T does not state that "it did not pay Broadvox any disputed amount."  *See* Pl.'s Mem. 7.  Rather, AT&T claims that, because "Broadvox's bills do not contain sufficient detail to allow customers like AT&T to determine how much traffic was improperly billed . . . , AT&T took steps to *estimate* those amounts," and "[f]or the amounts that, according to AT&T's *estimates*, were properly billed as access services, AT&T paid Broadvox."  Countercl. ¶ 10 (emphases added).  Thus, AT&T alleges that it may have paid an amount that it otherwise would have disputed, had AT&T been provided more information.

      Moreover, AT&T has alleged damages in the form of "any amounts that it paid but that were not actually properly billed and thus not owed," *id.* ¶ 59, and it has incorporated this allegation into each of its counts, *see id.* ¶¶ 60, 72, 84, 92.  Although AT&T claims that it "*may* have overpaid Broadvox," *id.* ¶ 59 (emphasis added), the word "may" is not fatal.  These damages simply are not calculable at this stage.  And, accepting the facts as true, *see Aziz*, 658 F.3d at 390, the counterclaims state "a plausible claim" entitling AT&T to the return of any overpayment, *see Ashcroft*, 556 U.S. at 663 (citing *Twombly*, 550 U.S. at 556).  Given that these counterclaims "arise[] out of the transaction or occurrence that is the subject matter of [Broadvox's] claim[s]" and therefore are mandatory counterclaims, *see* Fed. R. Civ. P. 13(a)(1)(A), it is reasonable that AT&T brought the claims before it could calculate the exact

damages.  Undoubtedly, AT&T is aware of its obligation to withdraw any counterclaim for which discovery fails to provide evidence supporting an essential element.  *See* Fed. R. Civ. P. 11(b)(3); Md. Rule Prof'l Conduct 3.1.

Additionally, as for the damages on the declaratory judgment claim, it is noteworthy that the purpose of a declaratory judgment action is to avoid the "unnecessary accrual of damages and to afford one threatened with liability an early adjudication without waiting until an adversary should see fit to begin an action after the damage has accrued."  10B *Charles Alan Wright, et al., Fed. Prac. & Proc. Civ.* § 2751 (3d ed. 1998 & Supp. 2014); *see Nautilus Ins. Co. v. Winchester Homes, Inc.*, 15 F.3d 371, 376 (4th Cir. 1994) ("'[Federal] declaratory judgment relief was intended to avoid precisely the accrual of avoidable damages to one not certain of his rights.'" (quoting *ACandS, Inc. v. Aetna Cas. & Sur. Co.*, 666 F.2d 819, 823 (3d Cir. 1981))), *abrogated on other grounds as noted in Centennial Life Ins. Co. v. Poston*, 88 F.3d 255, 257–58 (4th Cir. 1996).  Accordingly, Broadvox's Motion will be denied without prejudice as to Counts I, II, and IV.  Broadvox may raise these arguments again in a motion for summary judgment if discovery fails to provide evidence of damages.

### B. Failure to Properly Allege Misrepresentation (Count III)

#### *1. Fraudulent Misrepresentation*

Broadvox argues that AT&T failed to plead scienter or intent, as required by Maryland law to state a claim for fraudulent misrepresentation.  Pl.'s Mem. 10–12.  It is true that scienter and intent are elements of fraudulent misrepresentation under Maryland law.  *See Hoffman v. Stamper*, 867 A.2d 276, 292–94 (Md. 2005) (elements of fraudulent misrepresentation are (1) knowing (2) assertion of false representation of material fact (3) made with intent to defraud plaintiff (4) on which plaintiff justifiably relied (5) and as a direct result of which plaintiff suffered damages).  AT&T counters that intent and knowledge can be pleaded generally, Def.'s

Opp'n 12–13, which also is true, *see Sterling v. Ourisman Chevrolet of Bowie Inc.*, 943 F. Supp. 2d 577, 584 (D. Md. 2013). AT&T then points to its allegations that (1) FCC decisions show that the services Broadvox provided were neither switched access services nor end office switching, (2) Broadvox knew of these decisions and knew it did not qualify as a provider of such services, and (3) Broadvox knew AT&T would rely upon the bills submitted for those services. Def.'s Opp'n 13–14 (citing Countercl. ¶¶ 34–35, 50, 54, 86, 88).

AT&T cannot allege reliance successfully because, according to its own allegations, it did not pay the bills it received from Broadvox based on Broadvox's representations, but rather paid them based on its own estimates. *See* Countercl. ¶ 10. AT&T's refusal to pay Broadvox for the disputed services shows that it did not rely on, but instead disputed and continues to dispute, Broadvox's representations as to its status under the Communications Act. Even if AT&T had relied upon Broadvox's bills, such reliance would not be justifiable. *See First Union Nat'l Bank v. Steele Software Sys. Corp.*, 838 A.2d 404, 442 (Md. Ct. Spec. App. 2003) (quoting *Robertson v. Parks*, 24 A. 411, 413 (Md. 1892)). AT&T found Broadvox's bills to lack sufficient or accurate information. Countercl. ¶ 10. If a party is faced with "'vague, general, or indefinite statements, [the statements are] insufficient [to justify reliance], because they should, as a general rule, put the hearer upon inquiry, and there is no right to rely upon such statements.'" *First Union*, 838 A.2d at 442 (quoting *Fowler v. Benton*, 185 A.2d 344, 349 (Md. 1962)); *see Appel v. Hupfield*, 84 A.2d 94, 97 (Md. 1951). Therefore, AT&T cannot show reliance on Broadvox's subjective opinion when it believed Broadvox's representations to be inaccurate and when it disputed, rather than paid, its bills. *See id.*

In addition to failing to allege reliance sufficiently, AT&T's allegations that Broadvox acted with knowledge that its reading of the law was false contain only "legal conclusions and 'bare assertions devoid of further factual enhancement.'" *Cyberlock Consulting, Inc. v. Info.*

7

*Experts, Inc.*, No. 12-396, 2012 WL 3841416, at *7 (E.D. Va. Sept. 4, 2012) (quoting *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009)). These allegations are insufficient because they contain only "minimal facts which are 'merely consistent with [Broadvox's] liability,' but fail to nudge [AT&T's] fraud claim 'across the line from conceivable to plausible.'" *Id.* (quoting *Iqbal*, 556 U.S. at 678).

### 2. Negligent Misrepresentation

Count III of AT&T's counterclaim also alleges negligent misrepresentation. Countercl. 20. I must dismiss this claim as well. Negligent misrepresentation requires that

> "(1) the defendant, owing a duty of care to the plaintiff, negligently asserts a false statement; (2) the defendant intends that his statement will be acted upon by the plaintiff; (3) the defendant has knowledge that the plaintiff will probably rely on the statement, which, if erroneous, will cause loss or injury; (4) the plaintiff, justifiably, takes action in reliance on the statement; and (5) the plaintiff suffers damage proximately caused by the defendant's negligence."

*Lloyd v. Gen. Motors Corp.*, 916 A.2d 257, 273 (Md. 2007) (quoting *Va. Dare Stores v. Schuman*, 1 A.2d 897, 899 (Md. 1938)). First, AT&T does not allege that Broadvox owed a duty of care to AT&T. *See* Countercl. ¶¶ 84–91. Indeed,

> "[e]qually sophisticated parties who have the opportunity to allocate risks to third party insurance or among one another should be held to only those duties specified by the agreed upon contractual terms and not to general tort duties imposed by state law. . . . Maryland law holds that a claim for negligent misrepresentation is improper when, as here, the only relationship between the parties is contractual, both parties are equally sophisticated, and the contract does not create an express duty of due care in making representations."

*Martin Marietta Corp. v. Int'l Telecommc'n Satellite Org.*, 991 F.2d 94, 98 (4th Cir. 1992) (quoting *Martin Marietta Corp. v. Int'l Telecommc'n Satellite Org.*, 763 F. Supp. 1327, 1332–33 (D. Md. 1991)).

And, although scienter is not a requirement for negligent misrepresentation, AT&T still must show that it justifiably relied on the alleged misrepresentation. *See Lloyd*, 916 A.2d at 273.

As explained above, AT&T did not rely on Broadvox's representations. If Broadvox was wrong about its status under the Communications Act, AT&T may recover any overpayment through its other counterclaims, but it has not stated a claim for fraudulent or negligent misrepresentation. Accordingly, Broadvox's Motion will be granted as to Count III.[2]

### C. Primary Jurisdiction Doctrine

As noted above, AT&T raised the affirmative defense of ripeness in light of the primary jurisdiction doctrine in its Answer. Answer 9. AT&T reasserted this argument in its Reply supporting its Motion to Dismiss the Amended Complaint, ECF No. 10. In essence, AT&T reads the case law as supporting its view that "issues regarding damages and compensation for regulated services [are] 'properly determined by the FCC' and [have] to be referred to the FCC under the primary jurisdiction doctrine." AT&T's Reply 10 (quoting *Sancom, Inc. v. AT&T Corp.*, 696 F. Supp. 2d 1030, 1040–43 (D.S.D. 2010)). In ruling on AT&T's Motion to Dismiss, I left open "whether the fact findings necessary to decide these legal issues should be made by this Court, or by the FCC, in response to a primary jurisdiction referral." Ltr. Order 3.

The primary jurisdiction doctrine provides that, "when a claim pending before a court 'requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body,' judicial proceedings are stayed 'pending referral of such issues to the administrative body for its views.'" *Advamtel, LLC v. AT&T Corp.*, 105 F. Supp. 2d 507, 511 (E.D. Va. 2000); *see Reiter v. Cooper*, 507 U.S. 258, 268 (1993); *Piney Run*

---

[2] As noted above, AT&T paid only what it estimated was due to Broadvox based on AT&T's own reading of the relevant law and specifically refused to pay the total amount sought in Broadvox's bills. Therefore, it seems likely that no facts could support the element of reliance. Still, I exercise my discretion to dismiss Count III without prejudice so that AT&T may refile if discovery provides a basis for doing so, consistent with Fed. R. Civ. P. 11 and the applicable case law outlined in this Memorandum Opinion. *See 180s, Inc. v. Gordini U.S.A., Inc.*, 602 F. Supp. 2d 635, 638–39 (D. Md. 2009) ("The determination whether to dismiss with or without prejudice under Rule 12(b)(6) is within the discretion of the district court." (citing *Carter v. Norfolk Cmty. Hosp. Ass'n*, 761 F.2d 970, 974 (4th Cir. 1985))).

*Pres. Ass'n v. Cnty. Comm'rs of Carroll Cnty.*, 268 F.3d 255, 262 n.7 (4th Cir. 2001). The doctrine "appl[ies] in circumstances in which federal litigation raises a difficult, technical question that falls within the expertise of a particular agency." *Piney Run*, 268 F.3d at 262 n.7. Yet, prior to referral, "courts must . . . balance the advantages of applying the doctrine against the potential costs resulting from complications and delay in the administrative proceedings." *Advamtel*, 105 F. Supp. 2d at 511. Further, when the agency "has already issued guidance on an issue, a primary jurisdiction referral is unwarranted." *Id.* at 513 n.13. When properly applied, the primary jurisdiction doctrine enables courts to "'tak[e] advantage of agency expertise and [to] refer[] issues of fact not within the conventional expertise of judges,'" as well as "'cases which require the exercise of administrative discretion,'" to the appropriate administrative agency so that the decision-making of the court and the agency is coordinated. *Id.* at 511 (quoting *Envtl. Tech. Council v. Sierra Club*, 98 F.3d 774, 789 (4th Cir. 1996)). Therefore, whether referral is appropriate under this doctrine is a question best resolved prior to summary judgment practice. *See generally id.* ("[The doctrine] also serves judicial economy because the dispute may be decided by the administrative agency and obviate the need for court intervention."). Accordingly, the briefing of summary judgment motions will be stayed pending resolution of the primary jurisdiction question.

> *Advamtel* provided the following useful illustration:
>
> One issue typically referred to the FCC under the primary jurisdiction doctrine is the reasonableness of a carrier's tariff because that question requires the technical and policy expertise of the agency, and because it is important to have a uniform national standard concerning the reasonableness of a carrier's tariff, as a tariff can affect the entire telecommunications industry. *See MCI Telecommc'ns Corp. v. Ameri-Tel, Inc.*, 852 F. Supp. 659, 665 (N.D.Ill. 1994). On the other hand, the doctrine of primary jurisdiction does not apply to an action seeking the enforcement of an established tariff. Because a tariff is essentially an offer to contract, such an action is simply one for the enforcement of a contract. As such, enforcement of a tariff to collect amounts due under it is well within the ordinary competence of courts.

105 F. Supp. 2d at 511 (footnotes omitted). On that basis, the court referred one count that was "a direct challenge to the reasonableness of plaintiffs' rates" and another count that did "not directly challenge the reasonableness of plaintiffs' rates," but "its resolution depend[ed] on an assessment of whether plaintiffs [we]re relying on excessively high access service rates as a means of subsidizing their local exchange service, for which, AT&T claim[ed], their rates [we]re excessively low." *Id.* The court explained that resolution of that claim "require[d] determining (i) whether plaintiffs' tariffs establish unreasonably high rates for long distance access services and (ii) whether the revenue generated from these allegedly exorbitant rates [was] used to subsidize local exchange service," such that it "require[d] an evaluation of the reasonableness of plaintiffs' rates for both local exchange service and long distance access service, issues that are plainly within the FCC's special competence and primary jurisdiction." *Id.* at 512. The plaintiffs' other four counts, in contrast "involve[d] a threshold legal question, namely whether plaintiffs had a right to bill AT&T for the access services at issue in th[at] case," a question that was "well within the ordinary competence of courts." *Id.*

A companion issue is whether, if some but not all claims should be referred, the remaining claims should be stayed. *See id.* at 513. "A court may, in its discretion, stay proceedings pending determination by an administrative agency pursuant to the doctrine of primary jurisdiction." *Id.* In *Advamtel*, the court decided against staying the claims it did not refer because "the referred issue" was "secondary" to "the predicate, or primary issue" posed by the remaining claims, such that determination of the primary issue did "not depend in any way on the resolution of the issues referred to the FCC." *Id.* The court also reasoned that, "because proceedings before an administrative agency typically take several years, a stay would significantly delay resolution of th[e] case." *Id.*

Because AT&T has raised the issue of primary jurisdiction, it will submit a brief on the issue on or before August 21, 2014; Broadvox may file a response on or before September 11, 2014; and AT&T may file a reply on or before September 25, 2014.[3]  The first relevant inquiry in the context of the Communications Act is whether each claim presents threshold legal questions for the court, or technical or policy questions for the FCC.  Additionally, the parties should address whether the FCC previously has offered guidance on any questions that the claims pose within its expertise.  Finally, the parties should consider whether, with regard to any claim that should be referred to the FCC, the claim presents a primary issue, which requires the stay of the remaining claims, or a secondary issue whose resolution will not affect the remaining claims.

## IV. Conclusion

For the reasons explained above, Broadvox's Motion to Dismiss will be GRANTED IN PART as to Count III and DENIED IN PART as to Counts I, II, and IV.  Count III will be DISMISSED WITHOUT PREJUDICE.  The parties will brief the question of primary jurisdiction in accordance with the schedule set above.  A separate order will issue.

Dated: <u>July 2, 2014</u>                               /S/
                                                 Paul W. Grimm
                                                 United States District Judge

jwr

---

[3] The opening and response briefs shall not exceed ten (10) pages each, and the reply brief shall not exceed eight (8) pages.